**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

GREENBERG & LIEBERMAN, LLC,

*Plaintiff*,

v.

JOHN DOES 1-20; SWFT INC. d/b/a BRIDGERS, *et al.*; BINANCE HOLDINGS LIMITED; DJI-PAY; TRONIFY, *et al.*,

*Defendants*,

*and* BITGET, BYBIT, HITBTC,

*Relief Defendant*s.

No. 8:26-cv-00187-JRR

**DEFENDANT BINANCE HOLDINGS LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
PRELIMINARY STATEMENT ........ 1
BACKGROUND ........ 2
ARGUMENT ........ 4
I. This Court Lacks Personal Jurisdiction over BHL ........ 5
A. Plaintiff Cannot Establish Personal Jurisdiction Under Maryland's Long-Arm Statute ........ 6
B. Exercising Personal Jurisdiction Would Violate Due Process ........ 9
II. Plaintiff's Claims Against BHL Should Be Dismissed for Failure to State a Claim ........ 12
A. Count IX Should Be Dismissed ........ 12
1. Plaintiff has not plausibly alleged that BHL knew of the conversion until months after it occurred ........ 13
2. Plaintiff has not plausibly alleged that BHL provided substantial assistance ........ 16
B. Count VIII Should Be Dismissed ........ 20
CONCLUSION ........ 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AdvanFort Co. v. Zamil Offshore Servs. Co.*,
704 F. Supp. 3d 669 (E.D. Va. 2023) .......... 11

*Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*,
340 Md. 176 (1995) .......... 12

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
293 F.3d 707 (4th Cir. 2002) .......... 9

*Al-Sabah v. World Bus. Lenders, LLC*,
160 F.4th 540 (4th Cir. 2025) .......... 12, 13, 14

*Al-Sabah v. World Bus. Lenders, LLC*,
No. 18-cv-2958-SAG, 2024 WL 263579 (D. Md. Jan. 24, 2024) .......... 12

*Al-Sabah v. World Bus. Lenders, LLC*,
No. SAG-18-2958, 2020 WL 3868989 (D. Md. July 9, 2020) .......... 18

*Aqua Acceptance, LLC v. Pelican Grp. Consulting, Inc.*,
No. 20-cv-2802-JRR, 2022 WL 2275465 (D. Md. June 23, 2022) .......... 8

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*,
480 U.S. 102 (1987) .......... 11, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 12

*Brown v. Washington Univ.*,
No. 24-3198-TDC, 2025 WL 2197145 (D. Md. Aug. 1, 2025) .......... 8

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 10, 11

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Cts., Inc.*,
334 F.3d 390 (4th Cir. 2003) .......... 7

*Chassels v. Krepps*,
235 Md. App. 1 (2017) .......... 20

*Christian Sci. Bd. of Dir. of First Church of Christ, Scientist v. Nolan*,
259 F.3d 209 (4th Cir. 2001) ........ 5

*Cincinnati Ins. Co. v. Hunt*,
No. 22-cv-189-M, 2024 WL 4828095 (E.D.N.C. Feb. 23, 2024) ........ 11

*Cranford v. Tenn. Steel Haulers, Inc.*,
No. ELH-17-2768, 2018 WL 3496428 (D. Md. July 20, 2018) ........ 6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ........ 5

*Dring v. Sullivan*,
423 F. Supp. 2d 540 (D. Md. 2006) ........ 10

*Duke v. Feldman*,
245 Md. 454 (1967) ........ 16

*FN Hertsal, S.A. v. Sirketi*,
No. 23-cv-1380 (RDA/WBP), 2024 WL 4255343 (E.D. Va. Sept. 20, 2024) ........ 10

*Gorby v. Weiner*,
No. TDC-13-3276, 2014 WL 4825962 (D. Md. Sept. 23, 2014) ........ 16

*Grayson v. Anderson*,
816 F.3d 262 (4th Cir. 2016) ........ 5

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*,
935 F.3d 211 (4th Cir. 2019) ........ 8

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009) ........ 15

*In re E.T.*,
No. 2152, 2020 WL 1303914 (Md. Ct. Spec. App. Mar. 18, 2020) ........ 13

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ........ 15

*In re Refco Inc. Sec. Litig.*,
No. 07-MD-1902 (JSR), 2011 WL 13168450 (S.D.N.Y. Dec. 8, 2011) ........ 19

*In re Royal Ahold N.V. Secs. & ERISA Litig.*,
351 F. Supp. 2d 334 (D. Md. 2004) ........ 11, 12

*In re UBS AG Sec. Litig.*,
No. 07 CIV. 11225 RJS, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ................................ 15

*Legends Title, LLC v. Cap. One, Nat'l Ass'n*,
659 F. Supp. 3d 637 (D. Md. 2023)........................................................................................ 18

*Lightfoot v. Cendant Mortg. Corp.*,
580 U.S. 82 (2017) ................................................................................................................... 5

*Mackey v. Compass Mktg., Inc.*,
391 Md. 117 (2006) .................................................................................................................. 8

*Messing v. Bank of Am., N.A.*,
373 Md. 672 (2003) ................................................................................................................ 18

*Orbita Telecom SAC v. Juvare LLC*,
606 F. Supp. 3d 240 (D. Md. 2022).......................................................................................... 7

*Orteck Intern. Inc. v. TransPacific Tire & Wheel, Inc.*,
No. DKC 2005-2882, 2006 WL 2572474 (D. Md. Sept. 5, 2006) ............................................ 7

*Pence v. Norwest Bank Minn., N.A.*,
363 Md. 267(2001) .................................................................................................................. 20

*Phillips v. British Airways*,
743 F. Supp. 3d 702 (D. Md. 2024)........................................................................................... 6

*Saadeh v. Saadeh, Inc.*,
150 Md. App. 305 (2003) ........................................................................................................ 16

*Schatz v. Rosenberg*,
943 F.2d 485 (4th Cir. 1991) ........................................................................................ 17, 18, 19

*Schuster v. SLM Corp.*,
No. CCB-17-2108, 2017 WL 4777708 (D. Md. Oct. 23, 2017)............................................... 18

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
605 U.S. 280 (2025) ........................................................................................................... 17, 20

*Stewart Title Guar. Co. v. Sanford Title Servs.*, LLC,
No. ELH-11-620, 2011 WL 2681196 (D. Md. July 8, 2011) ................................................... 20

*Stisser v. SP Bancorp, Inc.*,
234 Md. App. 593 (2017) .......................................................................................................... 7

*Strauss v. Credit Lyonnais, S.A.*,
No. 06-0702 (CPS), 2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006) .......... 19

*Sutton v. FedFirst Fin. Corp.*,
226 Md. App. 46 (2015) .......... 12

*Tex. Star Nut & Food Co. v. Truist Bank*,
632 F. Supp. 3d 664 (D. Md. 2022) .......... 18, 19

*Twitter, Inc. v. Taamneh*,
598 U.S. 471 (2023) .......... 12, 20

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 10, 11

*Zinz v. Evans & Mitchell Indus.*,
22 Md. App. 126 (1974) .......... 8

**Rules**

Fed. R. Civ. P. 12(b)(2) .......... 4

Fed. R. Civ. P. 12(b)(6) .......... 4

## PRELIMINARY STATEMENT

Plaintiff Greenberg & Lieberman, LLC alleges that it was the victim of an elaborate scheme, wherein unidentified Doe Defendants stole cryptocurrency that Plaintiff held in escrow on behalf of its clients. Plaintiff further alleges that the perpetrators carried out numerous subsequent cryptocurrency transactions to obscure the origin of the stolen assets and that, at some point, the stolen assets were transferred to or passed through accounts at Binance.com, the world's largest cryptocurrency exchange.

Plaintiff does not and cannot allege that anyone associated with Binance.com participated in, or had advance knowledge of, the theft. Nevertheless, Plaintiff has named Binance Holdings Limited ("BHL"), a Cayman Islands entity, as a defendant. Plaintiff alleges that BHL aided and abetted the theft, either by failing to recognize that the assets allegedly sent to Binance.com were stolen, or by being insufficiently responsive when, months after the conversion, Plaintiff contacted BHL. Plaintiff's claims should be dismissed for two independent reasons.

*First*, this Court lacks personal jurisdiction over BHL, both under the Maryland long-arm statute and the Due Process Clause of the Fourteenth Amendment. The Complaint contains no allegations that BHL purposefully directed any activity in the state of Maryland giving rise to this suit.

*Second*, Plaintiff fails to state a claim against BHL. The aiding-and-abetting claim fails, because BHL is only alleged to have learned that stolen assets had allegedly passed through Binance-hosted accounts four months *after* the theft, and the Complaint alleges no act through which BHL substantially assisted the conversion of Plaintiff's cryptocurrency. Plaintiff's additional claim mistakenly pleads equitable remedies as a cause of action.

## BACKGROUND

Plaintiff is a law firm that maintains escrow accounts for clients, including accounts holding cryptocurrency. (Dkt. No. 68 ("Third Am. Compl.") ¶¶ 9, 54). Plaintiff alleges that it was the victim of a "coordinated cyberattack targeting [its] cryptocurrency escrow accounts," which resulted in the theft of approximately $2.7 million worth of cryptocurrency. (*Id.* ¶¶ 54-56). The theft was allegedly carried out by unidentified "John Doe" defendants from an unknown location. (*Id.*). In addition to the John Does, Plaintiff has sued a smorgasbord of individuals and entities at various degrees removed from the underlying theft: Plaintiff's internet security providers (*id.* ¶¶ 11-13); insurance brokers (*id.* ¶¶ 15-16); a cryptocurrency swapping service and its CEO (*id.* ¶¶ 19-21); and other entities in the cryptocurrency space (*id.* ¶¶ 17, 22-27).

Binance.com is a global digital asset platform that allows its customers to store, transfer, and trade digital assets like Bitcoin. It is the world's largest cryptocurrency exchange by trading volume and users, with more than $125 trillion in cumulative trading volume and over 300 million registered users globally. It holds licenses, registrations, and authorizations in more than 20 jurisdictions outside of the United States, and is the first cryptocurrency exchange to have secured full authorization under the Financial Services Regulatory Authority of the Abu Dhabi Global Market's regulatory framework.

Plaintiff alleges that BHL, a Cayman Islands entity, operates the Binance.com exchange. (*Id.* ¶ 28).[1] An earlier iteration of Plaintiff's complaint alleged that some of the stolen cryptocurrency eventually made its way to accounts at Binance.com, after passing through

---

[1] As Plaintiff has acknowledged, BHL does not operate "Binance.US," which is a separate exchange serving customers in the United States. (*Id.* ¶ 28). Plaintiff also acknowledges that, effective January 5, 2026, Binance.com reorganized its global operations through entities licensed in Abu Dhabi, though it appears to allege that BHL controls these entities. (*Id.* ¶ 28B).

numerous intermediate accounts designed to conceal the origin of the assets. (*See* Dkt. No. 24 ("Sec. Am. Compl.") ¶ 44 (alleging that the stolen cryptocurrency was "rapidly fragmented" and sent through the routing services operated by named co-Defendants, "swapped into USDT," and then moved via "onward transfers" into deposit accounts "associated with" Binance and other exchanges, before being sent to "additional unknown" locations)).[2] In that Second Amended Complaint, Plaintiff named BHL as a "Relief Defendant," seeking preservation of records and "equitable relief with respect to proceeds in [BHL's] custody." (*Id.* ¶ 20). But Plaintiff was clear that "[n]o wrongdoing is alleged against" the company. (*Id.*).

On May 8, 2026, after filing the Second Amended Complaint, Plaintiff emailed a subpoena to BHL seeking certain user information. (Dkt. No. 80-2 ("Lieberman Decl.") ¶ 4; *see also* Third Am. Compl. ¶ 28C). On May 13, BHL's counsel responded in writing asserting, among other things, that BHL is a Cayman Islands company not subject to personal jurisdiction in the United States. (Lieberman Decl., Ex. 1, Dkt. No. 80-3 at 1 & n.2; *see also* Third Am. Compl. ¶ 28C). BHL nevertheless voluntarily responded to the subpoena by stating that it did not have possession, custody or control of the requested information. (Lieberman Decl., Ex. 1, Dkt. No. 80-3 at 1). As a courtesy, BHL further explained that the entities that operate the Binance.com exchange are located in the Abu Dhabi Global Market ("ADGM"). BHL listed the names of those entities, indicated that those entities would have custody of the requested information, described the proper ADGM process, and confirmed that the relevant entities would respond to process that complies with ADGM law. (*Id.* at 2).

---

[2] Neither Binance nor BHL were named as Defendants or otherwise mentioned in the initial Complaint. (*See generally* Dkt. 1). BHL has not been able to access a copy of the sealed First Amended Complaint to confirm if the same is true in that iteration. (*See* Dkt. 5).

In response, Plaintiff sent a copy of the subpoena to BHL via FedEx at an address in the Cayman Islands. (Lieberman Decl. ¶ 4). Plaintiff also made reference to unspecified "preservation demands" on BHL via email, notwithstanding the absence of any temporary restraining order or preliminary injunction directed to BHL or any relevant entity. (*Id.*, Ex. 2, Dkt. No. 80-4 at 4).

Unsatisfied with BHL's responses, Plaintiff did an about-face from its position that "[n]o wrongdoing is alleged against" BHL (Sec. Am. Compl. ¶ 20), amending its complaint (for a third time) on July 19, 2026, to now allege that BHL aided and abetted the underlying theft. (Third Am. Compl. ¶¶ 88-91). The Third Amended Complaint brings two of nineteen counts against BHL, Count VIII ("Equitable Restitution / Constructive Trust") and Count IX ("Aiding and Abetting Conversion").

The Third Amended Complaint appears to describe two theories of how BHL allegedly aided the theft. First, BHL allegedly had "actual or constructive knowledge" of the theft, because Plaintiff's funds allegedly passed at some point through Binance.com-hosted accounts and Binance's compliance organization should have identified them as proceeds of fraud. (*Id.* ¶ 89). Second, after Plaintiff corresponded with BHL's counsel, BHL allegedly provided "substantial assistance to the conversion and to the dissipation of the converted property" by failing to freeze the accounts or provide account information. (*Id.* ¶ 90).

## **ARGUMENT**

This Court should dismiss Plaintiff's claims against BHL for two independent reasons. First, this Court lacks personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Second, Plaintiff has failed to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

## I. This Court Lacks Personal Jurisdiction over BHL

A federal court "must have . . . power over the parties (personal jurisdiction) before it can resolve a case." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017).[3] "[T]he plaintiff bears the burden of demonstrating personal jurisdiction." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).

Plaintiff acknowledges that BHL is a foreign company (Third Am. Compl. ¶ 28) and appears to only allege that this Court has specific jurisdiction over BHL (*id.* ¶ 28D).[4] Two conditions must be satisfied to assert personal jurisdiction over a non-resident defendant. "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dir. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

Neither condition is met here. While the Complaint alleges that a theft occurred in Maryland, it does not allege that BHL participated in the theft itself. Rather, unidentified perpetrators, operating from unknown locations, attempted to launder the stolen assets through a complex series of transfers such that some of the assets ultimately allegedly transited through Binance.com. But there is no plausible allegation that BHL directed any activities towards Maryland that gave rise to the cause of action.

---

[3] Unless otherwise indicated, case text quotations omit all internal quotations, citations and alterations.

[4] Plaintiff does not appear to allege that this Court has "general jurisdiction" over BHL. Nor could Plaintiff credibly do so because general jurisdiction exists for a foreign corporation only if its "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

### A. Plaintiff Cannot Establish Personal Jurisdiction Under Maryland's Long-Arm Statute

The Maryland long-arm statute authorizes "personal jurisdiction over a person, who directly or by an agent," either:

> (1) Transacts any business or performs any character of work or service in the State;
>
> . . .
>
> (3) Causes tortious injury in the State by an act or omission in the State; [or]
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; . . .

Md. Code § 6-103(b).[5] Critically, the statute specifies that, "[i]f jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." Md. Code § 6-103(a); *see also Cranford v. Tenn. Steel Haulers, Inc.*, No. ELH-17-2768, 2018 WL 3496428, at *5 (D. Md. July 20, 2018) (describing how, under Section 6-103(a), "the plaintiff must show some purposeful act in Maryland in relation to one or more of the elements of plaintiff's cause of action").

*Transacting business.* Maryland courts have construed this prong "narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state." *Phillips v. British Airways*, 743 F. Supp. 3d 702, 711 (D. Md. 2024). "[B]usiness practices only tenuously connected to the cause of action are not enough to confer specific jurisdiction." *Id.*

The Complaint does not satisfy this standard. While it alleges generically that BHL "operat[ed] a global exchange marketed to and accessed by U.S. users at Binance.com" and that this "includ[es users] in Maryland" (Third Am. Compl. ¶ 28D), there is no allegation that BHL

[5] Sections (2), (5) and (6), which relate to contractual agreements or real property in the state, have no relevance here, as there is no allegation of any contractual relationship or real property involving BHL.

purposefully targeted the state. "[F]ocusing generally on customers located throughout the United States . . . without focusing on and targeting [the] forum state do[es] not yield personal jurisdiction." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Cts., Inc.*, 334 F.3d 390, 401 (4th Cir. 2003) (finding that a foreign defendant's maintenance of a website that is "generally accessible" by the public "fails to furnish a Maryland contact adequate to support personal jurisdiction").

Moreover, even if it were true that BHL marketed its exchange to Maryland users (though it is not), that general business practice has no connection to this cause of action. Plaintiff is not alleged to have been a Binance user or to have transacted directly with a Binance user from Maryland.[6] The unknown perpetrators are not alleged to have been located in Maryland or to have used Binance from Maryland. Rather, the funds were allegedly stolen from Maryland, and then sent in a series of complex transactions across multiple platforms in multiple unknown locations. (*See* Third Am. Compl. ¶¶ 57-72 (describing transactions made to "obscure [the stolen cryptocurrency's] origin, trail, and destination")). The alleged passive receipt of such assets by Binance, a foreign exchange, that occurred, by Plaintiff's own allegations, many transaction hops after the theft does not constitute a connection to any business Binance allegedly carried out in Maryland. *See Stisser v. SP Bancorp, Inc.*, 234 Md. App. 593, 638 (2017) (describing how the reach of Maryland's long-arm statute is "necessarily limited to [plaintiffs]' causes of action," and concluding that the defendant's conduct in Maryland, which consisted of the "filing of articles of

---

[6] Even if Plaintiff were a Binance user, the residence of a plaintiff does not, standing alone, satisfy the "transact business" prong of Section 6-103(b). *See Orteck Intern. Inc. v. TransPacific Tire & Wheel, Inc.*, No. DKC 2005-2882, 2006 WL 2572474, at *6 n.18 (D. Md. Sept. 5, 2006) ("Subsection (b)(1) . . . [is] focused on a defendant's conduct, not on the residence of the parties to whom such conduct was directed."); *Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240, 249 (D. Md. 2022) (holding that contract formation and correspondence with a Maryland-based plaintiff does not amount to "transacting business" under subsection (b)(1)).

. . . incorporation was—at best—only tangentially related to [plaintiffs]' claim for aiding and abetting"). When the "only alleged conduct that arguably constitute[s] the transacting of business" is the defendant's "general activities" within the state, the requirement that the plaintiff's cause of action "arise[s] from" those contacts is not met. *See Brown v. Washington Univ.*, No. 24-3198-TDC, 2025 WL 2197145, at *15 (D. Md. Aug. 1, 2025) (finding that plaintiff's discrimination claims did not "arise from" contacts that "satisfy the requirements of the long-arm statute" based solely on the defendant's "general activities relating to contracts with Maryland universities or federal government agencies" in the state).

*Tortious injury*. The long-arm statute also provides jurisdiction in certain circumstances where the defendant "[c]auses tortious injury in the State" by an "act or omission." Md. Code § 6-103(b)(3)-(4). But the relevant "act" is the "act of the alleged tortfeasor," *Zinz v. Evans & Mitchell Indus.*, 22 Md. App. 126, 131 (1974), or the tortfeasor's "agent," Md. Code § 6-103(b). Long-arm jurisdiction is not triggered by "other third party acts [that] were [allegedly] necessary to consummate the tort." *Zinz*, 22 Md. App. at 131; *see also Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 146-47 (2006) (considering whether a non-resident defendant or its agents "personally committed any tortious acts" in the state).

Here, the Doe Defendants are the alleged tortfeasors. (*See* Third Am. Compl. ¶¶ 77-86). Plaintiff only alleges that BHL aided and abetted that tort. (*Id.* ¶ 88). That does not render BHL the "agent" of the Doe Defendants, and an aiding-and-abetting allegation does not itself suffice to confer personal jurisdiction. *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 232 (4th Cir. 2019) (declining to exercise personal jurisdiction over a foreign defendant when plaintiffs "identified no suit-related forum contacts apart from their allegation of aiding and abetting"); *see also Aqua Acceptance, LLC v. Pelican Grp. Consulting, Inc.*, No. 20-cv-2802-JRR, 2022 WL

2275465, at *8 (D. Md. June 23, 2022) (observing that, while a court may invoke the "jurisdictional conspiracy doctrine" to exercise personal jurisdiction over a co-conspirator, that doctrine is not "applicable" to aiders and abettors).

Plaintiff may argue that Section 6-103(b)(3) allows this court to exercise jurisdiction over BHL for committing a tortious act or omission (though it did not). But Section 6-103(b)(3) applies only where such an act or omission is committed "in the State." Here, Plaintiff does not allege that BHL committed any tortious act *in Maryland*. And while Section 6-103(b)(4) may supply jurisdiction where a tortious act or omission is committed "outside the State," it only does so where the actor "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State." Plaintiff has not made such an allegation, and cannot make such an allegation.

**B. Exercising Personal Jurisdiction Would Violate Due Process**

Any exercise of personal jurisdiction must also comport with the Due Process Clause of the Fourteenth Amendment. The court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). These requirements are not satisfied here.

*First*, there is no allegation that BHL performed any act in Maryland relevant to this lawsuit. At most, the Complaint generally alleges that Binance marketed itself to U.S. users,

including in Maryland. (*See* Third Am. Compl. ¶ 28D). However, even if this was true,[7] the fact that the Binance platform may be accessed by Maryland residents is not the same as a "manifest intent" to "target[] Marylanders." *See Dring v. Sullivan*, 423 F. Supp. 2d 540, 548 (D. Md. 2006) (declining to find personal jurisdiction over a defendant that sent an email to a nationwide listserv which the defendant knew included Maryland residents). Absent a manifest intent to target Maryland in particular, the allegation that a victim of a fraud (perpetrated by third parties) happens to reside in Maryland is exactly the sort of "random" and "fortuitous" contact that does not support the exercise of personal jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[A] plaintiff cannot be the only link between the defendant and the forum."); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts with the other party's home forum, we believe the answer clear is that it cannot.").

*Second*, as discussed, this cause of action does not arise in any way from BHL's alleged forum-related contacts. Neither Plaintiff nor the Doe Defendants are alleged to have accessed Binance in Maryland in connection with the alleged theft. (*See* pp. 7-8, *supra*).

These fundamental defects are not remedied by the other theories of personal jurisdiction briefly referenced by Plaintiff. For instance, while Plaintiff alleges that BHL "purposefully directed conduct at the United States" by "exploiting U.S. trademark rights" (Third Am. Compl. ¶ 28D), courts have "uninformly recognized that a trademark registration is not sufficient to comport with traditional specific jurisdiction requirements," much less the exercise of personal jurisdiction by a court in Maryland. *See FN Hertsal, S.A. v. Sirketi*, No. 23-cv-1380 (RDA/WBP), 2024 WL

[7] Again, Plaintiff acknowledges that BHL does not operate "Binance.US," which is a separate exchange serving customers in the United States. (Third Am. Compl. ¶ 28).

4255343, at *4 (E.D. Va. Sept. 20, 2024) (discussing the exercise of personal jurisdiction over a foreign defendant in the district where the U.S. Trademark Office is located). Similarly, the allegation that BHL "previously appeared in U.S. federal litigation and executed waivers of service" (Third Am. Compl. ¶ 28) is entirely separate from any purported activity by BHL within the state of Maryland. *See Cincinnati Ins. Co. v. Hunt*, No. 22-cv-189-M, 2024 WL 4828095, at *8 (E.D.N.C. Feb. 23, 2024) (declining to find personal jurisdiction when the plaintiff's claim "d[id] not arise out of or relate to Defendants' service of process in the state court litigation"). And the allegation that BHL "direct[ed] laundering-related conduct at the proceeds of a theft from a Maryland-organized plaintiff" (Third Am. Compl. ¶ 28D) is both conclusory and again reliant on Plaintiff's status as a Maryland resident—not any purposeful activity by BHL within the state of Maryland. *See Walden*, 571 U.S. at 285; *Burger King Corp.*, 471 U.S. at 478.

*Finally*, haling BHL into this Court on these allegations would "offend traditional notions of fair play and substantial justice." *Walden*, 571 U.S. at 283. Forcing a foreign company to endure the burdens of litigation is particularly unjustified where, as here, the allegations to be answered are threadbare. *See In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp. 2d 334, 352-53 (D. Md. 2004) (observing that "[t]he weaker the [alleged] contacts . . . the less likely it is that jurisdiction is reasonable"). Doing so in this case would come with the "unique burdens" that are "placed upon one who must defend oneself in a foreign legal system" especially when a basis for Plaintiff's claim is BHL's insistence that Plaintiff properly serve the correct entity with the subpoena. *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 114 (1987). These burdens include costs associated with cross-border discovery and the need to obtain physical and testimonial evidence from third parties outside the reach of the Court's compulsory process. *See AdvanFort Co. v. Zamil Offshore Servs. Co.*, 704 F. Supp. 3d 669, 678 (E.D. Va. 2023). They

remain "significant" notwithstanding "modern advances in communication and travel," *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp. 2d at 353, and should be given "significant weight," *Asahi Metal Indus. Co.*, 480 U.S. at 114.

## II. Plaintiff's Claims Against BHL Should Be Dismissed for Failure to State a Claim

Count IX alleges that BHL aided and abetted the tort of conversion. (Third Am. Compl. ¶ 88). Count VIII is styled as a claim for "Equitable Restitution / Constructive Trust" against BHL. (*Id.* ¶ 87). Both should be dismissed for failure to state a claim.

To survive a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of a cause of action's elements" and "mere conclusory statements" do not suffice. *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. Count IX Should Be Dismissed

Under Maryland law, a defendant is liable for aiding and abetting a tort if the plaintiff can prove "(a) a primary actor committed a tort; (b) the defendant knew of, or was willfully blind to, that tortious act; and (c) the defendant substantially assisted the actor in bringing about its occurrence." *Al-Sabah v. World Bus. Lenders, LLC*, 160 F.4th 540, 550 (4th Cir. 2025); *see also Sutton v. FedFirst Fin. Corp.*, 226 Md. App. 46, 91 (2015); *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 186 (1995). Maryland law thus reflects "the same conceptual core that has animated aiding-and-abetting liability for centuries: that the defendant consciously and culpably participated in a wrongful act so as to help make it succeed." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023); *see also Al-Sabah v. World Bus. Lenders, LLC*, No. 18-cv-

2958-SAG, 2024 WL 263579, at *24 (D. Md. Jan. 24, 2024), *aff'd in part, rev'd in part on other grounds, and remanded,* 160 F.4th 540 (4th Cir. 2025); *In re E.T.*, No. 2152, 2020 WL 1303914, at *3 (Md. Ct. Spec. App. Mar. 18, 2020).

Even assuming that the Complaint adequately alleges that a primary actor (the Doe Defendants) committed the tort of conversion, it fails to allege that BHL had knowledge of the tort or substantially assisted its occurrence.

1. <u>Plaintiff has not plausibly alleged that BHL knew of the conversion until months after it occurred</u>

Under Maryland law, the knowledge element of aiding and abetting liability is met only if the defendant "knew of, or was willfully blind to, [the] tortious act." *Al-Sabah*, 160 F.4th at 550. It is not enough to say that a defendant should have been aware of the tortious conduct. *Id.* at 551. "[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and *who can almost be said to have actually known the critical facts*." *Id.* at 550 (emphasis in original).

Plaintiff alleges that BHL had "contemporaneous actual or constructive knowledge" that stolen assets were being moved through Binance-hosted accounts because the alleged "deposits of Plaintiff's traced funds . . . and the funding relationship between Binance accounts and the convergence wallet were visible on Binance's own systems. . . ." (Third Am. Compl. ¶ 89). According to Plaintiff, that the "volume, velocity, and patterning [of alleged deposits of Plaintiff's stolen assets] matched the laundering typologies Binance's compliance organization was built to detect" gave BHL knowledge that some accounts on its platform held Plaintiff's stolen assets. (*Id.*) At best, these allegations claim that BHL *should have known* about the allegedly stolen assets. They do not allege that BHL took any action to avoid confirming as much. Thus, they do not

plausibly allege that BHL knew about or was willfully blind to the alleged presence of the Plaintiff's specific stolen assets, which is what the law requires. *See Al-Sabah*, 160 F.4th at 550.

To be sure, Plaintiff alleges that BHL maintains a large compliance and risk organization which has the capability to identify accounts engaged in illicit activity. (Third Am. Compl. ¶ 28F). However, this does not lead to the plausible inference that Binance was willfully blind to the alleged transit of Plaintiff's stolen assets through Binance-hosted accounts. As Plaintiff's own complaint explains, tracing the provenance and destination of cryptocurrency when bad actors seek to hide this information can be difficult. (*Id.* ¶¶ 6, 65). In this case, the criminal group which stole Plaintiff's cryptocurrency used sophisticated techniques to mask the origin of the assets. (*Id.* ¶ 6). The stolen cryptocurrency was split into over a hundred fragmented transfers, was transferred across different blockchain networks, and was swapped for other cryptocurrency in a manner specifically "designed to evade detection thresholds." (*Id.* ¶¶ 57, 65). In this context, without allegations that BHL took any "actions to avoid confirming a high probability of wrongdoing," *see Al-Sabah*, 160 F.4th at 550, the Complaint does not plausibly allege that Binance was willfully blind to the alleged presence of Plaintiff's stolen assets in Binance-hosted accounts.

Plaintiff's allegations about Binance's alleged, unrelated compliance failures do not support a claim of willful blindness. The allegations about Binance's 2023 guilty plea are irrelevant, as the conduct underlying the plea long pre-dated the time period relevant here. (Third Am. Compl. ¶ 28A). Plaintiff goes on to allege that Binance's compliance failures "were not historical but continuing conditions persisting through the period of the theft." (*Id.* ¶ 28E). Plaintiff tries to support this conclusory assertion by pointing to media reports that the DOJ opened an investigation into Binance and at a U.S. Senate subcommittee's announcement of an inquiry into Binance. (*Id.*). Nowhere does Plaintiff allege these investigations have resulted in adverse

findings against BHL. Relying on the reported existence of government investigations to support an allegation of fault is precisely the sort of speculation which courts do not credit when evaluating a complaint. *See Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 514 (S.D.N.Y. 2009) (That "various investigations, inquiries, and subpoenas" were targeting a defendant's anti-competitive behavior did not make plaintiff's allegations of an antitrust conspiracy plausible.); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (Grand jury investigation into defendant by the DOJ "carrie[d] no weight in pleading an antitrust conspiracy claim" because "[i]t [was] unknown whether the investigation [would] result in indictments or nothing at all."). Plaintiff's allegations about compliance failures thus amount to improper "parroted allegations for which counsel has not conducted independent investigation." *In re UBS AG Sec. Litig.*, No. 07 CIV. 11225 RJS, 2012 WL 4471265, at *17 n.17 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014). Furthermore, even if credited, the alleged compliance failures relate to completely different conduct. They do not support an inference that Binance took action to avoid learning the origin of Plaintiff's assets at issue in this case, as is required to plead a claim of willful blindness.

In sum, the Complaint fails to allege that BHL had contemporaneous knowledge that the assets that allegedly transited its platform were stolen. Rather, the earliest BHL is alleged to have known about stolen funds was May 8, 2026, when it received a subpoena from Plaintiff. (Third Am. Compl. ¶¶ 28C, 89). Indeed, allowing a plaintiff to assert a defendant had knowledge of misconduct based on a mere subpoena for records in ongoing litigation between Plaintiff and Doe Defendants would allow plaintiffs to ensnare any potential defendants with nothing more than a

discovery request.[8] As such, any claim for aiding and abetting liability predicated on any alleged act by BHL prior to May 8, 2026 must be dismissed.

2. Plaintiff has not plausibly alleged that BHL provided substantial assistance

Even if it were adequately pled that BHL had knowledge of the underlying tort (whether before or after May 8, 2026), the Complaint still fails to plead that BHL substantially assisted the tortfeasor at any point in time.

Aiding and abetting liability "is limited to instances in which a defendant can be shown to have helped the principal tortfeasor bring about a particular tort." *Gorby v. Weiner*, No. TDC-13-3276, 2014 WL 4825962, at *16 (D. Md. Sept. 23, 2014). In other words, "aider and abettor tort liability is predicated upon the wrongdoer's engaging in acts of encouragement or assistance to the person actually committing the wrongful act." *Saadeh v. Saadeh, Inc.*, 150 Md. App. 305, 328 (2003). "'Silent approbation or pleasure in [another's commission of a tort] does not make a person' liable as an aider and abettor." *Gorby*, 2014 WL 4825962, at *16 (alterations in original) (quoting *Duke v. Feldman*, 245 Md. 454, 457 (1967)).

The Complaint alleges three ways that BHL "provided substantial assistance to the conversion and to the dissipation of converted property." (Third Am. Compl. ¶ 90). First, after May 8, 2026, BHL "declin[ed] or fail[ed] to confirm or implement any hold, freeze, or restriction on the identified accounts and wallets." (*Id.*). Second, at some unspecified time, BHL declined to "obtain, disclose, or act upon the account information within its control." (*Id.*). Third, at some unspecified time, BHL "continu[ed] to operate the custodial accounts and deposit-wallet

[8] As noted above, BHL responded to the Plaintiff's subpoena that BHL did not have possession, custody, or control of responsive records. (Lieberman Decl., Ex. 1, Dkt. No. 80-3 at 1).

infrastructure" through which the converted cryptocurrencies passed. (*Id.*). None of these alleged acts or omissions amounts to substantial assistance.

As an initial matter, the Complaint alleges that Plaintiff first contacted BHL about the alleged theft by emailing it a subpoena on May 8, 2026. (*Id.* ¶ 28C). As the Complaint acknowledges (*id.*), BHL promptly responded, explaining that BHL did not have possession, custody or control of the requested information, and directing the Plaintiff to the entities that would have the desired information. (Lieberman Decl., Ex. 1 Dkt. No. 80-3 at 1-2). At no point did Plaintiff provide BHL (much less the appropriate entities specified in BHL's letter) with a temporary restraining order or other legal process that might have required seizure of a user's assets or disabling user accounts. Thus, Plaintiff is faulting BHL for not freezing user accounts (without legal process and without confirmation that Plaintiff's attempt to trace stolen funds to these accounts was even accurate), and for not disclosing account information (over which it lacked custody or control, and in the face of data privacy restrictions in the ADGM, where the custodian entities are located).

In any event, the alleged failures to implement account freezes or disclose user information are precisely the type of nonfeasance which does not constitute aiding and abetting under Maryland law. *See Schatz v. Rosenberg*, 943 F.2d 485, 496 (4th Cir. 1991) ("Absent a duty to disclose, allegations that a defendant knew of the wrongdoing and did not act fail to state an aiding and abetting claim."); *see also Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 292 (2025) ("[A]iding and abetting usually requires misfeasance rather than nonfeasance. Absent an independent duty to act, a person's failures, omissions, or inactions—even if in some sense blameworthy—will rarely support aiding-and-abetting liability."). As this Court has previously recognized, "[w]hen there is no duty running from the alleged aider and abettor to the

plaintiff, the defendant must possess a 'high conscious intent' and a 'conscious and specific motivation' to aid the [underlying tortious activity]." *Legends Title, LLC v. Cap. One, Nat'l Ass'n*, 659 F. Supp. 3d 637, 655 (D. Md. 2023) (quoting *Schatz*, 943 F.2d at 496). It is well-settled Maryland law that banks do not generally owe a duty to produce information or freeze accounts based only on allegations of non-customers. *See Schuster v. SLM Corp.*, No. CCB-17-2108, 2017 WL 4777708, at *3 (D. Md. Oct. 23, 2017); *Al-Sabah v. World Bus. Lenders, LLC*, No. SAG-18-2958, 2020 WL 3868989, at *17 (D. Md. July 9, 2020); *Tex. Star Nut & Food Co. v. Truist Bank*, 632 F. Supp. 3d 664, 671 n.7 (D. Md. 2022).

In *Legends Title*, this Court dealt with a similar aiding and abetting claim against Capital One, premised on the deposit of fraudulently acquired funds into an account administered by the bank. This Court held that even if Capital One had knowledge of the fraud, plaintiffs had not alleged that Capital One owed them a duty to disclose. *Legends Title*, 659 F. Supp. 3d at 656. Capital One therefore could not be liable for aiding and abetting the fraud. *Id.* This Court also specified that Capital One's non-disclosure, and even its "failure to return the money, absent a court decree after completion of the alleged fraud" did not demonstrate the "high conscious intent of specific motivation" required for aiding and abetting liability. *Id.*

Binance is in substantially the same position as Capital One in *Legends Title*. The Complaint alleges no relationship between BHL and Plaintiff. *See Messing v. Bank of Am., N.A.*, 373 Md. 672, 691 (2003) (a bank has "no duty to . . . a non-customer and a stranger to the Bank."); *Schuster*, 2017 WL 4777708, at *3. BHL's alleged failures to implement account freezes or disclose confidential account-holder information are not conduct that can support aiding and abetting liability, especially upon the issuance of a subpoena for account records. Moreover, in the absence of a duty, BHL's alleged conduct does not demonstrate a "high conscious intent" or a

"conscious and specific motivation" to aid the conversion. *Schatz*, 943 F.2d at 496. At most, the Complaint alleges that almost four months after the conversion had occurred, BHL did not freeze cryptocurrency that Plaintiff alleges belong to it. Failing to assist a non-customer in the recovery of assets stolen months earlier—when no court order requires one to do so—is not aiding and abetting a conversion of those funds.

Nor did BHL provide substantial assistance by "continuing to operate the custodial accounts and deposit-wallet infrastructure" through which the converted cryptocurrencies allegedly passed. (Third Am. Compl. ¶ 90). "A bank is generally not liable for aiding and abetting fraudulent behavior when there is no evidence that the institution was doing anything more than providing its usual banking services to a customer." *Tex. Star Nut & Food Co.*, 632 F. Supp. 3d at 671. The "mere fact that participants in a fraudulent scheme use accounts at a bank to perpetrate it, without more, does not in and of itself rise to the level of substantial assistance." *Id.* Rather, "courts have consistently held that a bank does not substantially assist in a customer's wrongdoing simply by transferring funds into and out of a bank account." *In re Refco Inc. Sec. Litig.*, No. 07-MD-1902 (JSR), 2011 WL 13168450, at *12 (S.D.N.Y. Dec. 8, 2011) (also stating that "a bank does not aid and abet any customer wrongdoing simply by maintaining a bank account for the wrongdoer and processing funds in and out of that account"); *see also Strauss v. Credit Lyonnais, S.A.*, No. 06-0702 (CPS), 2006 WL 2862704, at *9 (E.D.N.Y. Oct. 5, 2006) ("The maintenance of a bank account and the receipt or transfer of funds does not constitute substantial assistance.").

Plaintiff's complaint does not allege BHL is in any different position. The Complaint alleges that BHL maintained accounts through which the Doe Defendants moved converted funds. As the cases make clear, this does not qualify as substantial assistance. If it did, any financial institution whose routine services incidentally helped wrongdoers commit crimes or

torts could be liable under an aiding and abetting theory. That is not the law. *See Twitter*, 598 U.S. at 503 ("The fact that some bad actors took advantage of [an online] platform[] is insufficient to state a claim that defendants knowingly gave substantial assistance and thereby aided and abetted those wrongdoers' acts."). To the contrary, "routine and general activity that happens on occasion to assist in a crime—in essence, 'incidentally'—is unlikely to count as aiding and abetting." *Smith & Wesson*, 605 U.S. at 292.

Accordingly, Count IX should be dismissed.

### B. Count VIII Should Be Dismissed

Count VIII seeks a "constructive trust or equitable lien" over any stolen proceeds in the custody of BHL, as well as "an accounting sufficient to identify subsequent transfers and recipients." (Third Am. Compl. ¶ 87). This count confuses remedies with causes of action.

Under Maryland law, a constructive trust is "an equitable remedy, not a cause of action in itself." *Chassels v. Krepps*, 235 Md. App. 1, 15 (2017); *accord Stewart Title Guar. Co. v. Sanford Title Servs.*, LLC, No. ELH-11-620, 2011 WL 2681196, at *4 (D. Md. July 8, 2011). The same is true of an equitable lien. *Stewart Title Guar. Co.*, at *4-5; *see also Pence v. Norwest Bank Minn., N.A.*, 363 Md. 267, 288-89 (2001). And the request for an "accounting sufficient to identify subsequent transfers" (Third Am. Compl. ¶ 87) is not a cause of action, but a hybrid of an equitable remedy and request for discovery. *See Stewart Title Guar. Co.*, 2011 WL 2681196, at *4 (noting equitable remedy of accounting). In sum, these are all remedial requests that depend on an underlying cause of action, which is deficient in this case.

Thus, Count VIII should be dismissed along with Count IX. *See Chassels*, 235 Md. App. at 16 (affirming the dismissal of a count for a constructive trust because "[w]hether or not a

constructive trust might be an appropriate remedy, there is no standalone cause of action for 'constructive trust'").

## CONCLUSION

For all these reasons, the Court should dismiss Plaintiff's Third Amended Complaint as to BHL.

Dated: New York, New York
November 3, 2026

Respectfully submitted,

*/s/ Thomas A. McKay*
Thomas A. McKay*
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
(212) 880-9484
tmckay@maglaw.com

**pro hac vice*

*/s/ Geoffrey H. Genth*
Geoffrey H. Genth
Bar No. 08735
KRAMON & GRAHAM, P.A.
750 East Pratt Street
Suite 110
Baltimore, Maryland 21202
(410) 752-6030
ggenth@kg-law.com

*Attorneys for Binance Holdings Ltd.*